**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 14, 2006

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v                                                           No. 129152

CEDRIC PIPES,

Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v                                                           No. 129154

JULIAN DALE KEY,

Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

Defendants were convicted of first-degree premeditated murder following a

joint trial before one jury. The Court of Appeals reversed defendants' convictions

on the bases that the admission of each codefendant's statements to the police

against the other was a violation of *Bruton v United States*,[1] and that the error was not harmless. In *Bruton*, the United States Supreme Court held that a defendant is deprived of his Sixth Amendment confrontation rights when a nontestifying codefendant's confession that inculpates the defendant is introduced at a joint trial.[2]

We agree with the Court of Appeals that defendants' Sixth Amendment confrontation rights were violated. However, we disagree with the Court of Appeals that the error warranted reversal of defendants' convictions. Unpreserved, constitutional errors are reviewed for plain error affecting substantial rights. Because defendants have failed to show reversible prejudice, actual innocence, or that the confrontation error ""seriously affect[ed] the fairness, integrity or public reputation"""[3] of the trial, reversal of their convictions was improper. Accordingly, we reverse the Court of Appeals judgment and reinstate defendants' first-degree murder convictions.

FACTS AND PROCEDURAL HISTORY

On March 23, 2002, three-year-old Destiney Thomas sustained a fatal gunshot wound as the result of a drive-by shooting. The prosecution charged

---

[1] 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968).

[2] *Id.* at 126.

[3] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citations omitted).

defendants Cedric Pipes and Julian Key with first-degree premeditated murder,[4] assault with intent to commit murder,[5] and possession of a firearm during the commission of a felony[6] in connection with the shooting.[7]

Pursuant to MCR 6.121(C),[8] defendants moved for separate trials or separate juries, arguing that their defenses were "mutually exclusive."[9] In support of the motion, defendant Key made an offer of proof that he would testify that he was not present and had no involvement in the shooting. Meanwhile, defendant Pipes made an offer of proof that he would testify that he was present when defendant Key shot at the house, but that Pipes had no involvement in the

---

[4] MCL 750.316(1)(a).

[5] MCL 750.83.

[6] MCL 750.227b.

[7] Defendant Pipes was also charged with being a felon in possession of a firearm. MCL 750.224f(1).

[8] MCR 6.121(C) provides that "[o]n a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant."

[9] In *People v Hana*, 447 Mich 325, 349; 524 NW2d 682 (1994), this Court held that "[i]nconsistency of defenses is not enough to mandate severance [under MCR 6.121(C)]; rather, the defenses must be mutually exclusive or irreconcilable." (Internal citations and quotation marks omitted.) In other words, "[t]he tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." *Id.* (Internal citations and quotation marks omitted.)

shooting. Neither defendant argued for severance based on the possibility of a *Bruton* error.[10]

The trial court denied defendants' motion, determining that defendants could not make the requisite showing of prejudice necessary to sustain the motion. The trial court concluded that although defendants' proposed defenses involved blame shifting, they were not "mutually exclusive." Furthermore, the trial court specifically noted that, given defendants' offer of proof, no *Bruton* problem was present in this case. If the codefendant testifies at trial, then his statements to the police are admissible because the maker of the statements is subject to cross-examination. The trial court relied on the offers of proof presented by both defendants where each unequivocally stated his intention to testify at trial. The trial court noted multiple times its determination that no *Bruton* problem was present because both defendants planned to testify.[11]

The prosecution's theory at trial was that the victim died in a drive-by shooting that resulted from a territorial dispute between defendants and rival drug dealers. According to the prosecution, rival drug dealers shot defendant Key's

---

[10] Under *Hana*, a *Bruton* error may provide grounds for severance. *Id.* at 346 n 7; *Zafiro v United States*, 506 US 534, 539; 113 S Ct 933; 122 L Ed 2d 317 (1993).

[11] The first proceeding ended in a mistrial. Before the commencement of the second trial, which is the subject of the present appeal, counsel for defendant Key asked that the earlier motion for separate trials or juries be reconsidered. The trial court declined to reconsider the motion, noting that none of the circumstances had changed.

girlfriend's automobile, a green Jeep Cherokee, in response to an argument with defendants. Defendant Key frequently used the green Jeep and had it in his possession when it was shot. The drive-by shooting that killed the victim was an act of retaliation for the damage done to the automobile.

The trial court admitted into evidence multiple statements given by both defendants to the police.[12] Both defendants' admissions recounted the argument with the rival drug dealers and discussions regarding retaliation for the shooting of the Jeep. Initially, each defendant shifted all blame for the shooting to his codefendant. Subsequently, each codefendant made statements that inculpated himself as well as his codefendant. Defendant Key conceded that both he and defendant Pipes committed the drive-by shooting. Key admitted that he and Pipes obtained a car from a drug customer, which they used in the drive-by shooting, while others followed in the Jeep as backup. Likewise, Pipes admitted that he rented a car for Key to use in the shooting and admitted following behind Key in the Jeep in order to "watch his [codefendant's] back" during the shooting.

After the prosecution presented its case-in-chief, the trial court inquired of defendants regarding how they planned to proceed. At that point, counsel for each defendant equivocated regarding whether his client would testify. The trial court

---

[12] The trial court instructed the jury that each statement was only to be considered against the defendant who made the statement. The jury was instructed on this point when the statements were admitted into evidence and when the trial court gave final jury instructions. However, as explained *infra*, such instructions do not cure a *Bruton* error.

acknowledged that defendants were free to not testify, but reiterated that its denial of their motion for separate trials and juries was specifically premised on the unequivocal offers of proof that defendants would testify at trial.

Ultimately, however, defendants exercised their Fifth Amendment right and did not testify at trial.[13]  However, defendants never sought a mistrial when the *Bruton* error became apparent.  The jury convicted both defendants of first-degree premeditated murder, but acquitted defendants on all other charges.  Defendants were sentenced to life imprisonment without the possibility of parole.

The Court of Appeals reversed defendants' convictions and remanded for new trials.[14]  The Court of Appeals majority concluded that the trial court denied defendants a fair trial by denying their motion for separate trials or separate juries, thus causing a *Bruton* error when defendants chose not to testify.  Furthermore, the Court of Appeals majority concluded that the admission of these statements in violation of defendants' confrontation rights was not harmless.  The Court of Appeals majority, however, failed to determine whether defendants properly preserved the *Bruton* error for appeal, as required by *People v Carines*.[15]  Furthermore, the Court of Appeals majority did not cite or apply the proper standard of review delineated in *Carines* for unpreserved, constitutional error.  In

---

[13] Defendants then rested.  They presented no evidence or witnesses.

[14] Unpublished opinion per curiam of the Court of Appeals, issued May 31, 2005 (Docket Nos. 247718, 247719).

[15] 460 Mich 750; 597 NW2d 130 (1999).

6

applying a harmless error analysis, the majority gave little weight to the highly self-incriminating nature of defendants' statements.

The dissent, however, would have affirmed defendants' convictions on the basis that the offers of proof submitted by the defendants, unequivocally representing that they would testify, waived any claim of error with regard to separate trials or separate juries.

The prosecution sought leave to appeal in this Court. After directing the parties to address whether the offers of proof by defendants waived any right to claim a confrontation error, we heard oral argument on whether to grant the application or take other peremptory action permitted by MCR 7.302(G)(1).[16]

## STANDARD OF REVIEW

Constitutional questions, such as those concerning the right to confront witnesses at trial, are reviewed de novo.[17] The effect of an unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights.[18] To avoid forfeiture under the plain error rule, a defendant must show actual prejudice.[19] Under the plain error rule, reversal is only warranted if the defendant

---

[16] 474 Mich 918 (2005).

[17] *People v Hickman*, 470 Mich 602, 605; 684 NW2d 267 (2004).

[18] *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004).

[19] *Id.*

is actually innocent or the error seriously undermined the fairness, integrity, or public reputation of the trial.[20]

## ANALYSIS

In *Bruton*, the United States Supreme Court held that a defendant is deprived of his Sixth Amendment right to confront witnesses against him when his nontestifying codefendant's statements implicating the defendant are introduced at their joint trial.[21] There is no error, however, if the codefendant testifies.[22] The Court held that giving limiting instructions to the jury that the statements can only be used against the declarant is not sufficiently curative because "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."[23]

In *Cruz v New York*,[24] a codefendant's statements were admitted against the defendant along with the defendant's own confession. The *Cruz* Court revisited the plurality opinion in *Parker v Randolph*.[25] In *Parker*, which involved the same

---

[20] *Id.*

[21] *Bruton, supra* at 126.

[22] *Id.*

[23] *Id.* at 135.

[24] 481 US 186; 107 S Ct 1714; 95 L Ed 2d 162 (1987).

[25] 442 US 62; 99 S Ct 2132; 60 L Ed 2d 713 (1979).

factual predicate as *Cruz*, four justices determined that *Bruton* was inapplicable and that there was no Sixth Amendment violation in cases where the defendant's own statement is admitted alongside the defendant's nontestifying codefendant's incriminating statement. Concurring in part and concurring in the judgment, Justice Blackmun stated that the admission of the codefendant's statement was a Sixth Amendment violation under *Bruton*, but any error was harmless beyond a reasonable doubt.[26] In *Cruz*, the Court adopted Justice Blackmun's approach, holding that a Confrontation Clause violation is not ameliorated when the defendant's confession is introduced at trial alongside a nontestifying codefendant's statement that inculpates the defendant.[27] Thus, "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant . . . the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him."[28] However, the Court found that the defendant's own confession was relevant in a manner applicable to the instant case. The Court held that the defendant's

---

[26] *Id.* at 77-81. Three justices dissented, and Justice Powell did not participate in the case.

[27] *Cruz, supra* at 193.

[28] *Id.*

confession "may be considered on appeal in assessing whether any Confrontation Clause violation was harmless . . . ."[29]

We agree with the Court of Appeals that a *Bruton* error occurred in this case.[30] However, a *Bruton* error does not require automatic reversal of a defendant's conviction.[31] The Supreme Court has recognized that a *Bruton* violation is nevertheless subject to harmless error analysis,[32] and in such a case a defendant's own confession "may be considered on appeal in assessing whether any Confrontation Clause violation was harmless . . . ."[33]

---

[29] *Id.* at 194.

[30] The Supreme Court's recent decision in *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), buttresses the point that both defendants' confrontation rights were violated by the admission of the nontestifying codefendant's incriminating statements. The statements clearly fall within the class of "testimonial" statements that are only admissible at trial if the declarant is available for cross-examination, or if the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine. *Id.* at 59.

[31] There is a ""'very limited class of cases"'" involving "structural errors" where errors are so "intrinsically harmful, without regard to their effect on the outcome, so as to require automatic reversal." *People v Duncan*, 462 Mich 47, 51, 52; 610 NW2d 551 (2000), quoting *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999), quoting *Johnson v United States,* 520 US 461, 468; 117 S Ct 1544; 137 L Ed 2d 718 (1997). This limited class of cases has never been recognized by either the United States Supreme Court or this Court to encompass *Bruton* errors. Because a *Bruton* error is not structural, it is subject to harmless error review.

[32] "We reject the notion that a *Bruton* error can never be harmless." *Brown v United States*, 411 US 223, 231; 93 S Ct 1565; 36 L Ed 2d 208 (1973).

[33] *Cruz, supra* at 194.

To determine whether the *Bruton* error warrants reversal, we must first identify the proper standard of review to be applied in this case. In *People v Carines*,[34] this Court discussed the governing standards of review for claims of alleged error in criminal trial proceedings. The standard of review differs depending on whether the error is constitutional in magnitude and whether the defendant properly preserved the error at trial. As we have noted, a *Bruton* error is of constitutional magnitude.

The other inquiry of consequence is whether the issue was preserved at trial. In order to properly preserve an issue for appeal, a defendant must "raise objections at a time when the trial court has an opportunity to correct the error . . . ."[35] Preservation serves "the important need to encourage all trial participants to seek a fair and accurate trial the first time around . . . ."[36] In this case, defendants never objected to the admission of the statements on *Bruton* grounds.[37] Defendants also expressly approved the limiting instructions given to the jury upon the introduction of each statement. Defendants were aware that the trial court predicated its decision to have a joint trial in front of one jury on defendants'

---

[34] *Carines, supra.*

[35] *People v Grant*, 445 Mich 535, 551; 520 NW2d 123 (1994).

[36] *Id.* (Internal citations and quotation marks omitted); *Carines, supra* at 761.

[37] Defendant Pipes did object to the introduction of one of his own statements because he had refused to sign it. However, this objection did not raise or preserve the *Bruton* error. See MRE 103(a)(1).

11

representations that they were going to testify at trial.[38] When each defendant exercised his right to not testify, thereby causing the *Bruton* error with regard to the other defendant, neither defendant objected or moved for a mistrial on the basis of the *Bruton* error. Rather, each defendant allowed the trial to proceed to a verdict without ever affirmatively arguing that his confrontation rights had been violated. By failing to object or move for a mistrial on *Bruton* grounds, defendants failed to properly preserve the *Bruton* error for appeal.[39] The Court of Appeals erred in failing to determine whether the *Bruton* error was properly preserved, and thereby failed to apply the proper standard of review. The Court of Appeals should have reviewed this unpreserved, constitutional error for "plain error that affected substantial rights" under *Carines*.[40]

---

[38] Absent an express waiver by defendants of their Fifth Amendment rights, we agree with the Court of Appeals majority that the trial court should not have relied on defendants' representations that they intended to testify at trial when deciding whether to grant separate trials or juries. We reject the Court of Appeals dissent's argument that defendants waived the *Bruton* error. See *People v Riley*, 465 Mich 442, 449; 636 NW2d 514 (2001). Defendants' silence in the face of a *Bruton* error amounts to forfeiture, not waiver, because waiver requires "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (internal citations and quotation marks omitted).

[39] Any other conclusion would be contrary to the rule that defendants cannot "harbor error as an appellate parachute." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). "The rule that issues for appeal must be preserved in the record by notation of objection is a sound one," *id.*, and that rule is totally eviscerated in situations, such as this, where defendants never address appealable issues with the trial court.

[40] *Carines, supra* at 774.

Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant.[41] Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the trial proceedings.[42] Defendants bear the burden of persuasion. The failure to establish a plain error that affected a substantial right precludes a reviewing court from acting on such an error. However, even if defendants show plain error that affected a substantial right, reversal is only warranted "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ."[43]

In this case, the first two requirements are satisfied because the introduction of the defendants' statements that incriminated each other violated defendants' Sixth Amendment confrontation rights. Once defendants exercised their rights not to testify, admission of the statements was in direct contradiction of the rules laid down in *Bruton* and *Cruz.*

The next question then is whether the *Bruton* error affected defendants' substantial rights. Stated otherwise, the error must have been outcome

---

[41] *Carines, supra* at 763.

[42] *Id.*

[43] *Id.* at 763 (internal citations and quotation marks omitted); *United States v Olano*, 507 US 725, 736; 113 S Ct 1770; 123 L Ed 2d 508 (1993); *Johnson v United States*, 520 US 461, 469-470; 117 S Ct 1544; 137 L Ed 2d 718 (1997).

determinative. Relying on *Bruton*, *Cruz,* and this Court's decision in *People v Banks*,[44] the Court of Appeals majority found that the *Bruton* error created prejudice that required reversal. The Court of Appeals majority determined that the evidence properly admitted against defendants was not overwhelming and that the prejudicial effect of the codefendants' statements against each other was significant. Therefore, the Court of Appeals found that the *Bruton* error was not harmless.

We disagree. The Court of Appeals failed to give sufficient weight to the evidence that was properly admitted against each defendant, particularly the proper admission of each defendant's self-incriminating statements, and therefore erroneously reversed defendants' convictions. As held in *Cruz*, it was not error for each defendant's *own* confessions to be admitted against that defendant.[45] The only error was the introduction of the nontestifying codefendant's incriminating statement in a case where both defendants were tried before a single jury. While

[44] 438 Mich 408; 475 NW2d 769 (1991). In *Banks*, this Court held that a *Bruton* error does not require reversal where "the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Id.* at 427 (internal citations and quotation marks omitted). This "harmless beyond a reasonable doubt standard" would be the correct standard of review if the *Bruton* error was preserved. *Carines, supra* at 774. However, this case deals with an *unpreserved*, constitutional error, so the Court of Appeals should have reviewed for plain error affecting substantial rights. *Id.*

[45] See also MRE 801(d)(2)(A), which provides for admission at trial of party admissions.

14

the Court of Appeals acknowledged that a defendant's confession "may be considered on appeal in assessing whether any Confrontation Clause violation was harmless,"[46] it accorded no weight to the strongly self-inculpating nature of each defendant's confession.

Given each defendant's statements, there is little question of actual innocence with regard to the first-degree murder convictions. This Court has recognized that "[o]ften . . . when the defendant confesses, there can be little doubt concerning his guilt."[47] Indeed, "'"the defendant's *own* confession is probably the most probative and damaging evidence that can be admitted against him."'"[48] Because each defendant's own statements were self-incriminating, we cannot conclude that either defendant was prejudiced to the point that reversal is required by the erroneous admission of his codefendant's incriminating statements. Each defendant individually admitted the territorial dispute with rival drug dealers, and each defendant's statements exposed the motive behind the homicidal shooting— retaliation for shooting the green Jeep Cherokee. In his second statement to the police, defendant Key explicitly admitted being the triggerman in the drive-by shooting and using an AK-47 rifle. Although Pipes did not confess to being the

[46] *Cruz, supra* at 194.

[47] *People v Dunn*, 446 Mich 409, 424; 521 NW2d 255 (1994).

[48] *Id.* at 423, quoting *Arizona v Fulminante,* 499 US 279, 296; 111 S Ct 1246; 113 L Ed 2d 302 (1991) (White, J., with Marshall, Blackmun, and Stevens, JJ., concurring), quoting *Bruton, supra* at 139 (White, J., dissenting); *Cruz, supra* at 195 (White, J., dissenting). (Original emphasis omitted; emphasis added.)

gunman, he admitted procuring a vehicle to transport defendant Key to the drive-by shooting and admitted following Key in the Jeep in order to "watch [Key's] back." Taken in isolation, these statements provide more than enough "damaging evidence," if believed by a jury, for the jury to find each defendant guilty beyond a reasonable doubt as a principal or as an aider or abettor of first-degree premeditated murder.[49]

Furthermore, other probative and properly admitted evidence at trial corroborated defendants' confessions. One witness, who was on the front porch of the victim's residence at time of the shooting, testified that a green Jeep Cherokee pulled in front of the house and someone opened fire from the passenger side of the vehicle. The witness, who was a friend of defendant Key, testified that the vehicle was similar to the vehicle Key was known to drive. Another witness, who was walking toward the victim's house, testified that he was approximately one block away from the house when he heard gunfire. After the gunfire ceased, the witness observed a green Jeep Cherokee headed toward him at a "kind of fast" pace. From a distance of ten to 12 feet away, the witness positively identified both defendants in the green Jeep Cherokee, driving in the opposite direction from the scene of the crime. The witness was familiar with both defendants, and testified that Key was known to drive a green Jeep Cherokee. Another witness, who was

---

[49] See MCL 767.39. The jury was instructed regarding the elements required to find guilt under an aiding or abetting theory.

16

on the side of the assaulted house at the time of the shooting, testified that he observed a small blue car and a green Jeep Cherokee drive to the residence. The witness ran toward the alley as soon as he observed a gun being pointed at the residence from the small blue car. The witness did not observe the gunshots being fired.

Key's girlfriend testified that she owned a green Jeep Cherokee and that she allowed defendant Key to drive her automobile "almost daily." At the time of the shooting, she was out of town and returned to find her vehicle missing.[50] When the witness retrieved her automobile from the police two weeks later, one window was "shot out" and the car had two or three bullet holes in it.

An inconclusive amount of gunshot residue was found in the Jeep. However, shell casings and bullet fragments collected at the scene of the crime were consistent with an AK-47 rifle. Two Detroit Police officers testified that the information provided to 911 operators implicated a green Jeep Cherokee with a partial license plate number of 341. The officers testified that the "numbers were inverted," because the license plate sequence on the green Jeep Cherokee owned by defendant Key's girlfriend had a partial plate number of 431.

---

[50] The witness testified that her automobile was parked at her residence when she left town, and that defendant Key did not have permission to drive her automobile on the weekend the shooting occurred. A second set of car keys was missing from the witness's residence.

This evidence, coupled with each defendant's own highly self-inculpating confession that was properly admitted against the defendant who made the statements, provided strong evidence of guilt from which the jury could convict these defendants. In light of this overwhelming evidence of guilt, the prejudicial effect posed by the *Bruton* error was minimal, and therefore the *Bruton* error was harmless.

Under plain error review, reversal is only appropriate when the plain error that affected substantial rights "seriously affected the fairness, integrity, or public reputation of the proceedings" or when the defendant shows "actual innocence." In this case, for the same reasons that we find that defendants cannot show prejudice, defendants cannot show that the error "seriously affected the fairness, integrity, or public reputation of the proceedings" or that they are actually innocent. The properly admitted evidence of guilt, including each defendant's own highly self-inculpating confession as properly used against him, was sufficient to render the *Bruton* error harmless. Indeed, it would be the reversal of convictions for error that did not affect the judgment that would seriously affect "'the fairness, integrity or public reputation of the judicial proceedings.'"[51]

## CONCLUSION

The Court of Appeals erred in reversing defendants' first-degree murder convictions. Defendants failed to object or move for a mistrial on *Bruton* grounds.

---

[51] *Carines, supra* at 773, quoting *Johnson, supra* at 470.

Therefore, defendants failed to properly preserve the *Bruton* error for appeal. The Court of Appeals should have reviewed this unpreserved, constitutional error for plain error affecting defendants' substantial rights. Because defendants failed to show prejudice requiring reversal, actual innocence, or that the error seriously affected the fairness, integrity, or public reputation of the trial, reversal was not warranted in this case. Accordingly, we reverse the Court of Appeals judgment and reinstate defendants' first-degree murder convictions.

Robert P. Young, Jr.
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                    No.  129152

CEDRIC PIPES,

       Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

V                                    No.  129154

JULIAN DALE KEY,

       Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

    I believe that this case represents a textbook example of when separate trials or separate juries should be used.  I agree with the majority that *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), was violated in this case.  Defendants' Sixth Amendment Confrontation Clause rights were violated when the statements of each defendant's nontestifying codefendant were heard by the single jury at defendants' joint trial.

However, I disagree with the majority's conclusion that this violation was not plain error that affected defendants' substantial rights. If the statements by each codefendant are not considered, the evidence is not overwhelming. No witness was able to identify who was actually responsible for the shooting. There were varying accounts of the vehicles involved in the shooting. And the jury's uncertainty about who was the shooter is evident in the jury's failure to convict *either* defendant of possession of a firearm during the commission of a felony.

Further, the effect on the jury of hearing each codefendant's unchallenged statements was great. See, e.g., *Bruton*, *supra* at 135-136. Each defendant's statements minimized any role he may have played and maximized the other defendant's role in the shooting. Moreover, hearing these unchallenged and inculpatory statements essentially rendered futile defendants' questioning of police officers, as well as contentions made during closing argument, that called into question the validity of the alleged statements made. The jury was unlikely to question the validity of the statements allegedly made when it heard that they were supported to some degree by statements made by each defendant's codefendant. Accordingly, I believe the *Bruton* violation was plain error that affected each defendant's substantial rights, and I would affirm the decision of the Court of Appeals and remand each case for its own new trial.

Michael F. Cavanagh
Marilyn Kelly