# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KENYETTA HYCINE PEREZ,

        Defendant-Appellant.

UNPUBLISHED
April 19, 2016

No. 325038
Wayne Circuit Court
LC No. 11-007412-FC

Before: MURRAY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right her bench trial convictions of armed robbery, MCL 750.529, and larceny in a building, MCL 750.360. Defendant was sentenced as a second habitual offender, MCL 769.10, to 7 to 15 years' imprisonment for the armed robbery conviction and 3 to 6 years' imprisonment for the larceny in a building conviction. She was also ordered to pay restitution of $1,450. For the reasons stated below, we vacate defendant's sentences and remand for resentencing.

## I. PERTINENT FACTS

Defendant's convictions arise from her participation in the armed robbery of 68-year-old Isaac Gregory. About a month before the robbery, after spending the night with Gregory at his home, defendant took his wallet containing his identification. Defendant returned the wallet to Gregory after he told her he needed it to go to the bank to cash his check and get his money. When defendant returned the wallet, Frank Butts, whom Gregory did not know, was with her. Defendant and Butts gave Gregory, who did not have his own transportation, a ride to the bank to cash his check.[1] When they arrived at the bank, Gregory went inside and withdrew $1,450 from his checking account, and put the money in his back pocket.[2] Butts and defendant then drove Gregory back home.

---

[1] Gregory received a monthly check that was directly deposited into his checking account.

[2] Gregory originally testified that he withdrew $1,150 from the bank, but his banking records indicated that he withdrew $1,450, which he acknowledged was probably correct.

-1-

Gregory invited Butts and defendant into his home so that Butts could use the bathroom. Butts went in the bathroom for a minute, came out, and told Gregory, who was sitting in the living room with defendant, to come here for a second. When Gregory came, Butts placed a gun to his head, and walked him into the bedroom where Butts told him to lay on the bed. Butts proceeded to rob him at gunpoint of the money that he had just withdrawn from the bank. Defendant went into the bedroom and yelled at Butts that he "didn't have to do that," but she left the room after Butts threatened her and told her to get out of the room. Butts threw blankets over Gregory and told him not to move. As Butts and defendant were walking toward the door to leave the house, Gregory heard defendant state, "oh, get his cell phone," after which he heard Butts come back. When Gregory got up after the robbery, defendant and Butts were gone, along with his cell phone and car keys.

## II. CONFRONTATION CLAUSE

Defendant claims that she was deprived of her constitutional right to confront the witnesses against her when the trial judge, sitting as the trier of fact, listened to non-testifying codefendant Butts's police statement implicating her in the robbery and larceny. We disagree.

We review de novo "[c]onstitutional questions, such as those concerning the right to confront witnesses at trial." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). However, because this issue was not preserved by proper objection at trial, our review is limited to plain error that affected defendant's substantial rights.[3] *Id.*; *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*; see also *Pipes*, 475 Mich at 274.

The Confrontation Clause guarantees an accused in a criminal prosecution the right "to be confronted with the witnesses against him." US Const, Am VI; Const 1963, art 1 § 20. In *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court "held that the Confrontation Clause bars testimonial hearsay against a criminal defendant unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the declarant." *People v Jordan*, 275 Mich App 659, 662; 739 NW2d 706 (2007). "In *Bruton* [*v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968)], the United States Supreme Court held that a defendant is deprived of his Sixth Amendment right to confront

---

[3] Although defense counsel objected when the prosecution moved to admit Butts's police statement and there was a discussion held at the bench, neither party nor the court placed anything on the record regarding the discussion, and thus, the basis for counsel's objection is not contained in the record. MRE 103(a)(1) (To preserve an issue regarding the admission of evidence, the objection must state the specific ground for the objection). Moreover, on appeal, defendant stated that "trial counsel did not object to this error." Thus, we treat this issue as unpreserved.

witnesses against him when his nontestifying codefendant's statements implicating the defendant are introduced at their joint trial." *Pipes*, 475 Mich at 274-275.

After reviewing the record, we conclude that there was no plain or prejudicial error with regard to the admission of Butts's statement that defendant took Gregory's cell phone. *Carines*, 460 Mich at 763-764. Defendant and Butts were tried at the same time, but defendant elected to have the court try her case, while Butts was tried by a jury. During the joint trial, the prosecutor introduced Butts's police statement, which was read into the record. While Butts's statement implicated defendant in the larceny because he stated that defendant took Gregory's phone, nothing in the record indicates that the trial court used Butts's statement at all in deciding defendant's guilt or innocence. Instead, it is evident that Butts's statement was admitted only against Butts because the court indicated that his statement could not be considered in defendant's case since he could not be cross-examined and the statement should be disregarded in judging defendant's case. Furthermore, the court did not rely on or reference Butts's statement at all in its decision concluding that defendant participated in or aided and abetted Butts in the armed robbery of Gregory and the larceny of his phone. Instead, the court explicitly specified that it based its decision on Gregory's testimony and defendant's statement confirming that she brought Butts to Gregory's home and that Gregory was robbed at gunpoint. This record demonstrates that the court did not consider Butts's statement in determining defendant's guilt or innocence and, thus, did not impermissibly use Butts's police statement against defendant in violation of her constitutional right to confront the witnesses against her. *Pipes*, 475 Mich at 274-275. Although, as defendant points out, the court heard Butts's statement when it was read into the record, "[u]nlike a jury, a judge is presumed to possess an understanding of the law, which allows him to understand the difference between admissible and inadmissible evidence," *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992), and to decide a case solely on the evidence properly admitted at trial, *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001). We conclude that there was no plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant failed to preserve her claim that she was denied the effective assistance of counsel by moving for a new trial or evidentiary hearing before the trial court pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). *People v Sabin*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).[4] We review unpreserved claims of constitutional error for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764; MRE 103(d). Further, because a *Ginther* hearing was not held in this case, this Court's review is limited to errors apparent on the record. *Jordan*, 275 Mich App at 667.

"The Sixth Amendment, as applied to states by the Fourteenth Amendment, guarantees that the accused in a criminal prosecution 'shall enjoy the right . . . to have the Assistance of

_____

[4] This Court denied defendant's motion to remand this case to the trial court for an evidentiary hearing regarding her claims of ineffective assistance. *People v Perez,* unpublished order of the Court of Appeals, entered August 21, 2015 (Docket No. 325038).

-3-

Counsel for his defence.'" *People v Buie*, 298 Mich App 50, 61; 825 NW2d 361 (2012), quoting US Const, Am VI. "Counsel must provide effective representation under an objective standard of reasonableness." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996). "To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness, and that it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different." *Jordan*, 275 Mich App at 667. A defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012); *Jordan*, 275 Mich App at 667-668.

Defendant first claims that Gregory's preliminary examination testimony contradicted his trial testimony and that her defense counsel rendered ineffective assistance in failing to impeach Gregory with the prior testimony. We disagree.

Gregory testified during the trial that, as defendant and Butts were leaving Gregory's house after Butts robbed him at gunpoint, he heard defendant state to Butts, "oh, get his cell phone," after which he heard Butts come back, and when Gregory got up after the robbery, his cell phone and car keys were gone. Defendant asserts that, in contradiction to his trial testimony, Gregory's testimony at the preliminary examination indicated that he heard defendant instruct Butts to get his (Butts's) cell phone. To support her argument, defendant cites the following preliminary examination testimony of Gregory:

> *Q.* Alright. Do you recall indicating that she told Mr. Butts, "Don't forget to get your cell phone?"
>
> *A.* Right, that's when they were getting ready to walk out of the house.

At first glance, viewing this testimony in isolation and considering the use of quotations and the pronoun "your" in the question, it may appear that Gregory testified that he heard defendant instruct Butts to get his own (Butts's) cell phone. However, when Gregory's preliminary examination testimony is viewed in its entirety, it becomes apparent that Gregory actually testified that he heard defendant instruct Butts to get Gregory's cell phone, which is entirely consistent with his trial testimony.[5] Thus, defense counsel was not ineffective for failing

---

[5] Gregory testified at the preliminary examination as follows, in pertinent part:

> *Q.* Well when does she tell Mr. Butts to get your cell phone?
>
> *A.* As they was leaving out.
>
> * * *
>
> *Q.* All right.

to attempt to impeach Gregory regarding the alleged inconsistency. Instead, trial counsel's decision not to pursue such a line of questioning constitutes a reasonable trial strategy.[6] Here, the record indicates that had trial counsel chosen to question Gregory regarding the alleged inconsistency, Gregory would have likely confirmed that he was referring to his own cell phone during his preliminary examination testimony when he heard defendant instruct Butts to get the phone, which would have further highlighted defendant's involvement in the robbery and larceny. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . . We will not second-guess counsel on matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citations omitted). Defendant has not overcome the strong presumption that her trial counsel's performance in failing to impeach Gregory with his preliminary examination testimony was sound trial strategy. *Trakhtenberg*, 493 Mich at 52; *Jordan*, 275 Mich App at 667-668.

Defendant also claims that defense counsel was ineffective in failing to seek to exclude Butts's police statement from the trial or to redact the statement to remove the incriminating portion of the statement. However, because the trial court decided defendant's case and did not consider Butts's police statement in determining defendant's guilt or innocence, defendant

---

*A.* And as he was walking out—well the house is real quiet, and he's walking out I heard her make a statement to him, "Get his cell phone."

\* \* \*

*Q.* So when Ms. Perez tells Mr. Butts to get your cell phone, does Mr. Butts come get your cell phone?

*A.* Right. He made a u-turn and came back and took my cell phone.

\* \* \*

*Q.* And then at some point after Mr. Butts got the money, he was about to leave and Ms. Perez was going to leave with him, fair statement?

*A.* Right.

*Q.* And she said, "Grab his cell phone?"

*A.* Correct.

*Q.* And it wasn't her that grabbed the cell phone, it was Mr. Butts that came back and grabbed the cell phone?

*A.* Correct.

[6] We also note that defense counsel attempted to discredit Gregory's version of the incident by eliciting during cross-examination and arguing during closing argument that Gregory, in his initial police report, did not mention that defendant told Butts to get Gregory's cell phone.

cannot demonstrate that, but for counsel's failure to seek to exclude or redact the statement, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. See *Taylor*, 245 Mich App at 305; *Wofford*, 196 Mich App at 282 (holding that a judge is presumed to possess an understanding of the law that allows him to understand the difference between admissible and inadmissible evidence and to decide a case solely on the evidence properly admitted). Thus, this claim of ineffective assistance also fails.

## IV. SENTENCING GUIDELINES

Defendant claims that a preponderance of the evidence did not support the assessment of 15 points under Offense Variable (OV) 10 for exploitation of a vulnerable victim pertaining to the involvement of predatory conduct. MCL 777.40(1)(a). We agree.

"OV 10 of the sentencing guidelines addresses the exploitation of a vulnerable victim." *People v Ackah-Essien*, 311 Mich App 13, 29; 874 NW2d 172 (2015), citing MCL 777.40(1). "Points are assessed under this OV when exploitive conduct was directed against a vulnerable victim and the vulnerability was readily apparent, in that the victim was susceptible to injury, physical restraint, persuasion, or temptation." *Ackah-Essien*, 311 Mich App at 29. The victim's vulnerability may also arise from the victim's "characteristics, relationships, and circumstances." *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011). "Under OV 10, a court must assess 15 points if predatory conduct was involved." *Ackah-Essien*, 311 Mich App at 29, citing MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a); *Huston*, 489 Mich at 463. " '[P]redatory conduct' under the statute is behavior that is predatory in nature, 'precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action.' " *Id.* (citation omitted; alteration in original). Predatory conduct is "predatory rather than purely opportunistic criminal conduct." *Ackah-Essien*, 311 Mich App at 30. "The timing of an offense, including watching the victim and waiting until the victim is alone before victimizing him or her, may be evidence of predatory conduct." *People v Kosik*, 303 Mich App 146, 160; 841 NW2d 906 (2013). Further, a defendant's predatory conduct "can create or enhance a victim's 'vulnerability.' " *Huston*, 489 Mich at 454. Where a defendant engages in " 'predatory conduct' to 'exploit[] . . . a vulnerable victim,' " an assessment of 15 points for OV 10 is appropriate. *Id.* at 468; MCL 777.40(1)(a).

We cannot conclude on this record, that Gregory was a vulnerable victim. The trial court made no finding as to Gregory's vulnerability and vulnerability is not otherwise readily apparent in this case. The prosecution relies on Gregory's age and "the existence of a domestic relationship" to create vulnerability. Age alone however, does not constitute vulnerability and there is no additional evidence that Gregory was infirm or susceptible to victimization. *People v Phelps*, 288 Mich App 123, 136; 791 NW2d 732 (2010). Gregory and defendant also did not have the requisite domestic relationship to warrant the assessment of 10 points under OV 10. At the time Gregory was robbed, he and defendant were not dating and all we know of the relationship is that at some point there was physical intimacy. "The pair did not share a domicile, and they were not related." *People v Jamison*, 292 Mich App 440, 448; 807 NW2d 427 (2011) lv den 490 Mich 934; 805 NW2d 831 (2011). While there is no testimony that defendant stalked or laid in wait for Gregory, *Huston*, 489 Mich at 462, there is evidence that the defendant and Butts gained entry into the home by Butts's request, real or contrived, to use the

restroom. However, even if the pre-offense conduct was designed to isolate the victim, this record does not support a finding that points can be assessed due to an absence of proof on vulnerability.

Changing the scoring of OV 10 from 15 points to zero however, would result in defendant's minimum guidelines range in the Class A Grid, changing from 108 to 225 months in the D-III cell, to 81 to 168 months in the D-II cell considering defendant's second habitual offender status. Accordingly, resentencing is appropriate. *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006).

## V. RESTITUTION

Lastly, defendant claims that the trial court's restitution award of $1,450 was improper because it was not supported by the evidence where Gregory testified that only $750 was stolen during the robbery. We disagree and find no plain error in the trial court's restitution award. Because defendant failed to preserve this issue by raising it before the sentencing court, *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003), we "review the trial court's restitution award for plain error affecting substantial rights." *People v Gaines*, 306 Mich App 289, 322; 856 NW2d 222 (2014) (citation omitted).

"Crime victims have a constitutional right to restitution." *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006), citing Const 1963, art I, § 24. "Further, crime victims have a statutory right to restitution under the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*." *Gubachy*, 272 Mich App at 708. The CVRA provides, in part, "when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate." MCL 780.766(2). Specifically, as here, where a crime "results in the loss of a victim's property, the trial court may order the defendant to pay the victim, as restitution, the value of the property that was lost." *Gubachy*, 272 Mich App at 708, citing MCL 780.766(3). "[T]he Legislature has clearly manifested an intent to make victims of crime as whole as they can fairly be made and to leave the determination of how best to do so to the trial court's discretion on the basis of the evidence presented and subject to the prosecuting attorney's burden of proving losses attributable to [the] defendant's crime-related acts." *Id.* at 713.

" 'The amount of restitution to be paid by a defendant must be based on the actual loss suffered by the victim' " as a result of the offense. *People v Fawaz*, 299 Mich App 55, 65; 829 NW2d 259 (2012), quoting *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007); MCL 780.767(1). Further, "the amount of restitution should be based upon the evidence." *Gubachy*, 272 Mich App at 713 (internal quotations omitted); *People v Guajardo*, 213 Mich App 198, 200; 539 NW2d 570 (1995). In determining the amount of a victim's loss, "[a] judge is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997); MCL 780.767(2). "Only an actual dispute [regarding the proper amount of restitution], properly raised at the sentencing hearing in respect to the type or amount of restitution, triggers the need to resolve the dispute by a preponderance of the evidence." *Grant*, 455 Mich at 243, citing MCL 780.767(4).

The sentencing court in this case set defendant's restitution at $1,450, which was the amount recommended in the presentence report. Defendant did not challenge the amount of the restitution before the sentencing court. Absent a challenge before the sentencing court regarding the amount of restitution, the court was entitled to rely on the recommendation of the presentence report, which is presumed to be accurate unless challenged. *Grant*, 455 Mich 233-234. Thus, the sentencing court did not plainly err when it relied on the amount of restitution of $1,450 recommended in the presentence report. *Id*.

Furthermore, we conclude that the evidence supported the restitution award. As defendant and the prosecution both indicate on appeal, Gregory testified that Butts took about $750 or at least $750 cash from his pocket during the robbery. Gregory initially testified that he believed he withdrew $1,150 from his checking account, which he placed in his pocket, and after the robbery he discovered he had $300 left in this pocket so he believed he was robbed of $750. However, his banking records, which were admitted into evidence, indicate that he actually withdrew $1,450, which Gregory acknowledged was probably correct. The evidence, as well as the presentence report, indicates that defendant and Butts also took Gregory's cell phone and car keys during the robbery. Given this evidence, we cannot say that the court's restitution award of $1,450, which was properly based on the recommendation contained in the presentence report, did not reflect Gregory's actual loss, including $1,450 in cash withdrawn less $300 remaining in his pocket after the robbery in addition to the value of the cell phone and car keys. Thus, we conclude that defendant failed to establish that the court committed plain or clear error in setting the amount of restitution at $1,450.

Defendant's sentences are vacated and this case is remanded for resentencing. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

-8-