*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

REBECCA DAWN FEGAN,

        Defendant-Appellant.

UNPUBLISHED
January 14, 2026
8:45 AM

No. 365787
Chippewa Circuit Court
LC No. 2019-003875-FH

Before: SWARTZLE, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of embezzlement by an agent or employee, more than $1,000 but less than $20,000, MCL 750.174(4)(a), and illegal use of a financial transaction device, MCL 750.157q. Defendant appeals by right, arguing that the trial court judge denied her a fair trial by expressing his bias through verbal and nonverbal conduct. She also challenges her bindover on the basis that the investigating officer failed to preserve evidence that could have been favorable and admitted at her preliminary examination. Because defendant's arguments are unavailing, we affirm.

## I. FACTS

Defendant's convictions arise from her employment by Robert Markstrom, a business owner who operated a construction company and a property-rental company, from his home in Sault Ste. Marie. While employed with Markstrom, defendant used his bank accounts, credit cards, and checks to pay her personal expenses, along with expenses for her small business, "After All This Time" or "AATT," prompting Markstrom to contact the police. State Police Trooper Cody Mayer investigated Markstrom's allegations and found instances where defendant used Markstrom's bank account to pay her credit card bill and make payments to her business. Defendant denied stealing from Markstrom and explained that the payments were charitable donations Markstrom made to her business, loans he provided to her, or part of a compensation arrangement she had with Markstrom.

At defendant's preliminary examination, Mayer acknowledged that defendant provided him with several documents during his investigation that he did not preserve, explaining he did

-1-

not believe they were relevant to the case. Those documents included letters from defendant's utility and service providers, health insurance paperwork, letters from defendant's credit union about compromised debit cards, gift card receipts, letters regarding charitable donations, and receipts from a local flower shop. Mayer initially could not retrieve those documents, but later found them and provided them to the parties and the district court. At a hearing on Mayer's alleged failure to retain the evidence, the district court determined that, although Mayer was misguided by failing to keep at hand evidence defendant had given to him, the evidence was not exculpatory, and nothing indicated that Mayer had acted in bad faith.

The district court went on to find that the evidence established probable cause to believe that defendant committed the charged acts and bound her over for trial. Defendant moved to dismiss the charges on the basis of Mayer's alleged destruction of evidence, but the circuit court found that the evidence had not been destroyed and denied the motion.

During trial, defense counsel unsuccessfully moved for a directed verdict, after which defendant informed counsel that she saw the trial court judge roll his eyes during counsel's cross-examination of Trooper Mayer. The trial court excused the jury, and the following discussion occurred:

> [*Defense Counsel*]: My client just observed something, it's very disturbing to me, your Honor. Did you just roll your eyes at the jury when I asked for a directed verdict?

> *The Court*: No. Roll your eyes at the jury, I didn't even see the jury. I said, okay.

> [*Defense Counsel*]: Oh, during my questioning with Trooper Mayer, he rolled his eyes, that's what you observed?

> *The Defendant*: Um-hum.

> *The Court*: I may have . . . because it got very confusing, I didn't roll my eyes at the jury. Thank you, Ms. Fegan, for that. During the questioning, it was getting very confusing. He didn't know the answer and . . . if I did that, it was because the question was confusing, it was not at the jury, the jury didn't—

> [*Defense Counsel*]: I'll move for a motion for directed verdict and mistrial based upon what my client just observed.

The trial judge denied rolling his eyes at any time during trial, but stated that if he did, it was because of defense counsel's confusing line of questioning or because of a contentious interaction between defense counsel and the prosecutor. The trial court denied defendant's motion for a mistrial and provided a specific jury instruction regarding the alleged conduct with its final instructions.

The jury found defendant guilty of both charges. This appeal followed.

## II. JUDICIAL BIAS

Defendant argues that she was denied a fair trial because the trial judge verbally and nonverbally communicated bias in favor of the prosecution during defense counsel's cross-examination of Mayer. Defendant preserved her argument regarding the alleged nonverbal conduct by moving for a mistrial on that basis, but she did not preserve her challenge regarding the trial judge's verbal conduct because she failed to raise any argument regarding the judge's verbal conduct in the trial court. See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, we review unpreserved claims of judicial bias for plain error. *Jackson*, 292 Mich App at 597. "Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant. Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the trial proceedings." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006). Even if a defendant can show that plain error affected a substantial right, reversal is warranted only "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks and citation omitted; alteration in original).

"A criminal defendant is entitled to a neutral and detached magistrate." *Jackson*, 292 Mich App at 597 (quotation marks and citation omitted). "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Id*. at 598 (quotation marks and citation omitted). Our Supreme Court has set forth "the appropriate standard for determining when a trial judge's conduct in front of a jury has deprived a party of a fair and impartial trial:"

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Stevens*, 498 Mich at 164.]

The list of factors articulated in *Stevens* is not exhaustive, and "[t]he reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case." *Id*. at 172. "[T]he aggrieved party need not establish that each factor weighs in favor of the conclusion that the judge demonstrated the appearance of partiality for the reviewing court to hold that there is a reasonable likelihood that the judge's conduct improperly influenced the jury." *Stevens*, 498 Mich at 172. Further, "[j]udicial misconduct may come in myriad forms," including "belittling of counsel, inappropriate questioning of witnesses, providing improper

strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions" from the bench. *Id*. at 172-173 (quotation marks and citation omitted).

Considering the factors set forth in *Stevens*, we conclude that the trial court's conduct, both verbal and nonverbal, did not pierce the veil of judicial impartiality. We note that it is unclear from the record whether the trial court judge rolled his eyes during defense counsel's cross-examination of Mayer and that the record does not indicate whether the trial judge's tone when characterizing defense counsel's questioning as "confusing" and "thanking" defendant for noting his behavior was derogatory or sarcastic. However, the record does reflect that defense counsel repeatedly accused Trooper Mayer of destroying evidence and lying and that Mayer became confused during counsel's questioning. The record also reflects that defense counsel and the prosecutor engaged in contentious exchanges while Mayer testified, that defense counsel accused the trial court of "just endorsing what [the prosecution] says," and that counsel challenged the court's decision regarding the appropriateness of a question. The trial court ruled on objections and provided clarification when necessary and did not improperly inject itself into defense counsel's questioning of Mayer. The record does not indicate that the trial court spoke to defense counsel or defendant in a condescending or sarcastic way, and neither counsel nor defendant stated otherwise during trial.

In addition, defendant's allegation of judicial bias focuses on the trial court's alleged eye-rolling and its explanation when addressing defendant's observations of the alleged eye-rolling. The court denied doing so, but explained that if it did, it was because defense counsel's questioning was confusing or it occurred during a contentious interaction between the advocates. Considering the limited conduct at issue in the four-day trial, we cannot conclude that the court's conduct pierced the veil of judicial impartiality and denied defendant a fair and impartial trial. Further, the trial court provided the following curative instruction:

> My comments; rulings, and questions, and instructions are not evidence. It's my duty to see that the trial is conducted according to law and tell you the law that applies to this case. However, when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about this case. If you believe that I have a personal opinion about this case, you must disregard that opinion. You are the only judges of the facts in this case and you should decide this case from the evidence presented.
>
> *   *   *
>
> Throughout the trial I may have smiled or laughed during various parts of this testimony and I may have also eye rolled . . . while Trooper Mayer was testifying. You are not to take that as any indication of how I personally feel about this case. If you have noticed this, please disregard my actions and decide this case based upon the facts and evidence that you've heard, that have been presented in this case.

"Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Accordingly,

-4-

considering the *Stevens* factors and the record in this case, defendant has failed to overcome the presumption of judicial partiality, and her claim of judicial bias is unavailing.

### III.  FAILURE TO PRESERVE EVIDENCE

Next, defendant argues that the district court erred by binding her over for trial without reviewing all the evidence because Mayer destroyed some of the evidence defendant provided to him during his investigation.  Defendant contends that the evidence was insufficient to support her bindover because the district court failed to review "the whole matter."  Defendant moved to dismiss the charges in the circuit court on the basis of Trooper Mayer's conduct.  We review for an abuse of discretion a district court's decision to bind over a defendant and a trial court's decision denying a motion to dismiss charges.  *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022); *People v Caswell*, 336 Mich App 59, 69; 969 NW2d 538 (2021).  An abuse of discretion occurs when the court's "decision falls outside the range of reasonable and principled outcomes," or when the decision is premised on an error of law.  *Id.* at 69 (quotation marks and citation omitted).

To establish a due-process violation based on the failure of law enforcement to preserve potentially useful evidence, a criminal defendant must show bad faith on the part of the law-enforcement officer.  *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012).  It is the defendant's burden to show that the evidence at issue was exculpatory, or that the police acted in back faith by failing to preserve it.  *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017).  The destruction of potentially exculpatory evidence resulting from mere negligence generally does not establish bad faith.  *Youngblood*, 488 US at 58.

Trooper Mayer testified at defendant's preliminary examination that any failure to preserve the documents that defendant had provided him resulted from his belief that they were not pertinent to his investigation.  However, before the district court made a determination regarding whether Mayer destroyed evidence favorable to defendant, Mayer located some of the documents at issue and provided them to the parties and the district court.  Specifically, Mayer located copies of defendant's bank transfers to various utility providers, an explanation-of-benefits form from Freedom Life Insurance, copies of Facebook postings, a Bath and Body Works gift card receipt, pay stubs from Markstrom's business, a healthcare-coverage determination, and a letter from defendant's credit union stating that her debit cards had been compromised.  Those documents indicated that defendant paid for utilities after Markstrom disputed charges to his account, defendant had health insurance in March 2018, defendant was not eligible for healthcare coverage or assistance in November 2018, defendant received a digital gift card to Bath and Body Works from Markstrom's e-mail address, defendant's Soo Co-Op Credit Union debit cards were compromised, defendant earned $15 an hour while working for Markstrom, and certain individuals in a Facebook group were unhappy with Markstrom's construction company.  Although Mayer should have retained the documents and provided them to the prosecution from the outset, they were not exculpatory in nature.  See *Heft*, 299 Mich App at 79.  Further, the record indicates that Mayer did not believe that certain documents were pertinent to the investigation, and nothing suggests that he acted in bad faith.  Accordingly, defendant fails to establish that Mayer acted in bad faith such that her due-process rights were denied.  See *Youngblood*, 488 US at 58; *Heft*, 299 Mich App at 79.

Defendant contends that Mayer ultimately failed to produce some of the documents she provided to him during the investigation and asserts that it is unclear how many documents he failed to retain. She argues that Mayer failed to retain letters from her various service and utility providers, debit card information from Markstrom Construction's account with Co-Ed Flowers, and letters to Markstrom thanking him for his charitable donations. However, similar to the documents Mayer provided to the district court after the preliminary examination, documents indicating that defendant paid for her utilities after Markstrom disputed the charges made to his accounts, that Markstrom Construction had an account with Co-Ed Flowers, and that Markstrom made charitable donations, were not exculpatory with respect to either of the charges against defendant. See *Heft*, 299 Mich App at 79. Further, the record supports the conclusion that Mayer's failure to maintain this evidence was the result of negligence or poor judgment rather than bad faith. See *Youngblood*, 488 US at 58; *Heft*, 299 Mich App at 79. Accordingly, defendant has failed to establish that any missing evidence was exculpatory or that it rendered the district court's bindover determination an abuse of discretion.[1]

Affirmed.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

---

[1] To the extent that defendant challenges whether the prosecutor presented sufficient evidence at defendant's preliminary examination to establish probable cause to believe that she committed the offenses, her argument lacks merit. "If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018 (2004); see also *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002) ("a magistrate's erroneous conclusion that sufficient evidence was presented at the preliminary examination is rendered harmless by the presentation at trial of sufficient evidence to convict").