# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JONAS JOSEPH MOSES,

        Defendant-Appellant.

UNPUBLISHED
May 8, 2018

No. 336295
Chippewa Circuit Court
LC No. 15-001889-FC

Before: SHAPIRO, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

A jury convicted defendant of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(b)(*iii*) (sexual penetration of victim between 13 and 15 years of age through use of coercion), one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(b)(*iii*) (sexual contact with victim between 13 and 15 years of age through use of coercion), and two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (sexual contact through use of force or coercion). He was sentenced to 45 to 70 years' imprisonment for each of the CSC-I convictions, 10 to 15 years' imprisonment for the CSC-II conviction, and 365 days' imprisonment for each of the CSC-IV convictions, to be served concurrently. Defendant appeals as of right. We affirm.

Defendant and his wife founded a church in Sault Saint Marie, Michigan. Defendant was the pastor. Among the parishioners was a young female, ZJ.[1] According to ZJ, between Christmas 2014 and April 2015, when she was 14 years old, defendant would bring her into his office and force her to perform oral sex on him. The allegations against defendant came to light when ZJ was interviewed by Erica Stempky, a child protective services (CPS) worker, and Chippewa County Sheriff Detective Sergeant Greg Postma, regarding an unrelated matter. Stempky and Postma testified that, during the course of that interview, ZJ disclosed the allegations against defendant. The interview was not recorded, but Stempky and Postma testified that they each took notes of ZJ's responses.

---

[1] Defendant was convicted of four counts of CSC-IV against another female victim. However, her testimony is not pertinent to defendant's arguments on appeal.

Prior to trial, defendant moved for a court-appointed expert and "for fees to be paid by the county pursuant to MRE 706." Defendant contended that an expert in forensic interviewing techniques—which he contended were not followed in this case—was "required" to establish "the evidentiary foundation to show that the testimony of [ZJ] is tainted and not reliable." Defendant explained that the expert "represents . . . a substantial defense of evaluating the complaining [witness's] credibility, given that no [corroborating] evidence exists and any evidence of the forensic interview was shredded by the prosecution . . . ." Defendant named the expert in his motion and contended that he was "indigent and [had] no money to fund this expert." Defendant concluded that denying the motion would "impair his constitutional rights under the 14th Amendment and 6th Amendment."

After a hearing, the trial court denied defendant's motion, explaining that if defendant wished to challenge the victim's credibility, he could do so on cross-examination. The court also concluded that it could not appoint an expert for defendant's asserted reason; the court explained that an expert could not opine on the credibility of a witness and, therefore, defendant had not shown a nexus between the need for an expert and the facts of the case. The trial court also questioned whether defendant was indigent, pointing out that he had two retained attorneys representing him. Accordingly, the trial court denied defendant's motion, but noted that defendant was free to privately hire an expert, if he so chose.

On appeal, defendant offers a variety of reasons why the trial court erred by denying his motion for a court-appointed expert witness, but we are unpersuaded by any of his arguments.

Defendant first raises the unpreserved argument that his constitutional rights were violated because the trial court "never conducted a hearing to ascertain how effective an expert could be used in this particular instance," which deprived him of "a fair opportunity to present his" defense. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Demonstrating that an error affected substantial rights "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

Initially, we note that defendant never requested an ex parte hearing in this case, and the case that he cites for the proposition that he possesses a constitutional right to an ex parte hearing specifically states that such a right is a *statutory* right in federal court. See *Weeks v Angelone*, 4 F Supp 2d 497, 526 (ED Va, 1998) (addressing 18 USC 3006A(e)(1), which provides that "[c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application"). Moreover, defendant has not explained how he was prejudiced by the lack of an ex parte hearing or what effect holding an ex parte hearing would have had on the outcome of this case. Defendant's argument centers on the fact that the trial court was unable "to ascertain how effective an expert could be used in this particular instance," but defendant ignores that the trial court reviewed defendant's argument and evidence for why he required an expert when he filed his motion for a court-appointed expert. That motion was based entirely on how effective defendant perceived an expert would have been in this case. The trial court found those arguments unpersuasive, and we

can discern no reason—and defendant does not provide a reason—why this result would be different if defendant argued his motion in an ex parte hearing.[2]

Defendant next offers a preserved constitutional argument that his due process rights under the sixth and fourteenth Amendments of the United States Constitution were violated when the trial court denied his request for a court-appointed expert. Preserved constitutional claims are reviewed de novo. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

As best we can discern, defendant broadly argues that Michigan's requirements for how an indigent defendant can obtain a court-appointed expert witness violate the indigent defendant's constitutional due process rights. In support of his argument, defendant contends that Michigan's requirements violate the principles set forth in *Ake v Oklahoma*, 470 US 68, 83; 105 S Ct 1087; 84 L Ed 2d 53 (1985).[3] The *Ake* Court explained that "[m]eaningful access to justice" and "fundamental fairness" require that a defendant be afforded "an adequate opportunity to present their claims fairly within the adversary system." *Id*. (citation and quotation marks omitted). Accordingly, in the context of an insanity defense, the *Ake* Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist" to assist in the preparation of his defense. *Id*. at 83.

After *Ake* was decided, this Court held that, with the exception of a psychiatric expert, a defendant is not *entitled* to an expert unless he or she can demonstrate "a nexus between the facts of the case and the need for an expert." *People v Leonard*, 224 Mich App 569, 582; 569 NW2d 663 (1997); see also *People v Bergman*, 312 Mich App 471, 489; 879 NW2d 278 (2015) ("We conclude that *Ake* does not require appointment of a defense expert without a demonstration of a nexus between the need for an expert and the facts of the case."). In fact, the *Leonard* Court rejected the same argument now posed by defendant. See *Leonard*, 224 Mich App at 580-583. Michigan law permits a trial court, in its discretion, to grant funds to an indigent defendant to obtain an expert witness if he cannot safely proceed to a trial without the testimony of an expert

---

[2] Defendant insists that the trial court denied his motion for a court-appointed expert because the court believed that defendant was not indigent and could afford an expert without public assistance. This is inaccurate. In denying defendant's motion, the trial court reasoned that defendant failed to establish the need for an expert because his stated reason was to attack the victim's credibility, which he could do on cross-examination without an expert. The trial court made no finding on whether defendant was indigent.

[3] Defendant also asserts that in *Hinton v Alabama*, ___ US ___; 134 S Ct 1081; 188 L Ed 2d 1 (2014), the United States Supreme Court held that indigent defendants are entitled to an expert witness at public expense under the VI and XIV Amendments to the United States Constitution. This is not the holding from *Hinton*. *Hinton* addressed whether the defendant received ineffective assistance where trial counsel failed to investigate whether he could move the court for additional funding for an expert. *Id*. at 1088-1089. The *Hinton* Court simply held that this was constitutionally deficient performance and remanded to determine whether the defendant was prejudiced. *Id*. at 1083.

witness. MCL 775.15. But to be entitled to such an expert, defendant needed to establish a nexus between the facts of the case and the need for an expert. *Leonard*, 224 Mich App at 582. Because defendant failed to do so, he was not deprived of due process. See *id*. at 582-583.[4]

Next, defendant argues that he demonstrated a nexus between the facts of the case and the need for an expert. Defendant contends that there was a nexus between the facts of the case and the need for an expert because an expert could have explained "why proper forensic examinations are required" when interviewing child victims. While we agree that it is best practice to follow forensic-interviewing protocol, defendant does not explain why he believes that proper forensic examinations are required. "A party may not announce a position on appeal and leave it to this Court to unravel or elaborate his claims." *People v Hicks*, 259 Mich App 518, 532; 675 NW2d 599 (2003).[5]

In the same argument, defendant states as follows:

> It has been recognized by child forensic experts that a child's question suggests that she has no understanding of the consequences of her allegation on the life of the person she has accused. An alternative hypothesis could be that the child found it easier to lie about a serious matter because she really did not understand the havoc that such a lie would wreak in the life of an innocent person, and ultimately on society as a whole. The interviewer could have explored that hypothesis with questions like, "Do you understand that this is among the most serious crimes a person can be charged with?, and that anyone convicted of such a crime is going to be in prison for a very long time, then be on the sex offenders list for the rest of his life?"

This argument is unpreserved because defendant never requested an expert to forensically interview ZJ. Assuming that an expert forensically interviewed ZJ and believed that she was not telling the truth, defendant has not explained why this testimony would be admissible. See *People v Peterson*, 450 Mich 349, 375-376; 537 NW2d 857 (1995) (explaining that an expert is

---

[4] To the extent that defendant claims that he was denied equal protection under the law because he was not able to present an expert due to his indigence, we reject that claim. If defendant had established a nexus between the facts of the case and the need for an expert, defendant would have been entitled to an expert at public expense. However, defendant failed to establish such a nexus. The denial of a court-appointed expert witness was a result of this failure, not of defendant's indigence.

[5] Assuming that defendant is contending that the reason "proper forensic interviews are required" is to ensure that the interviewee was telling the truth, Stempky already testified at trial that the purpose of forensic-interviewing protocol was to elicit the truth from the interviewee. Defense counsel cross-examined Stempky and Postma on whether they followed forensic-interviewing protocol when interviewing ZJ, and defense counsel cited to the protocols and showed that Stempky and Postma did not follow them when they interviewed ZJ. In so doing, defense counsel cast doubt on the results of the interview and, coextensively, on ZJ's credibility.

not permitted to vouch "for the veracity of the child victim"). Accordingly, defendant has not established prejudice in this regard. *Carines*, 460 Mich at 763.[6]

Defendant also asserts that the trial court was required to make a determination whether he was prejudiced by its decision to not appoint an expert and whether he received a fundamentally fair trial despite not having expert assistance. In support of this argument, defendant cites *People v Mateo*, 453 Mich 203; 551 NW2d 891 (1996), *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994), and *People v Young (After Remand)*, 425 Mich 470; 391 NW2d 270 (1986). However, we see no support in any of these cases for defendant's argument. Each case states that an *appellate* court must determine whether a defendant was prejudiced as part of a harmless error review, not that a trial court needed to make that determination in the event it denies a defendant's request for a court-appointed expert witness. *Mateo*, 453 Mich at 214-215; *Pickens*, 446 Mich at 346; *Young*, 425 Mich at 501. Accordingly, there is no error for us to review.

Finally, defendant argues that the trial court improperly vouched for ZJ's credibility. We disagree. Defendant failed to preserve this issue by objecting at trial. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Therefore, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

In general, vouching for the credibility of a witness is improper. See *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

On cross-examination in this case, defendant's counsel asked ZJ about whether it was important to tell the truth, and whether she was in fact telling the truth, to which she answered yes. Defense counsel then asked ZJ if she had ever made any personal goals to be more honest. The prosecution objected based on relevance, and defendant argued that the question was relevant to whether ZJ was telling the truth. The trial court then stated,

> [ZJ] testified, she's telling the truth. You asked her if she's telling the truth today she said yes. So we understand she's telling the truth.

Acknowledging that the trial court has a duty "to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters," MCL 768.29, we see no basis to conclude that the trial court vouched for ZJ's credibility. Rather, the statement that "we understand she's telling the truth" made the point that the matter had already been covered, and served to "limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." MCL 768.29. Indeed, ZJ

---

[6] Defendant also contends that if he "had the funds to bring . . . [his] own forensic . . . expert" to trial, then he could have "detailed how a false report could have . . . been manipulated" by the victim, who reports showed was a "dysfunctional individual that manipulated the jury." Again, we emphasize for defendant that an expert cannot vouch for the veracity of a child victim. See *Peterson*, 450 Mich at 375-376. Accordingly, we find no error.

was under oath and sworn to tell the truth, and then reaffirmed that she was telling the truth when answering defense counsel's question. In response to defense counsel's attempt to have ZJ confirm a third time that she was telling the truth, the trial court's remarks were an attempt to control the proceedings and limit repetitive and cumulative evidence. Moreover, the trial court instructed the jury that they were solely responsible for determining the witnesses' credibility. Jurors are presumed to follow the trial court's instruction, and it is presumed that instructions cure most errors. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). We conclude that this one instance over the course of a three-day trial did not prejudice defendant. *Carines*, 460 Mich at 763.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien