*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 27, 2019

Plaintiff-Appellee,

v

No. 342887
Monroe Circuit Court
LC No. 17-243999-FH

NICOLE LYNN PACHECO,

Defendant-Appellant.

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Nicole Lynn Pacheco, appeals by right her jury trial convictions of operating a motor vehicle while intoxicated (third offense; hereafter "OWI 3d"), MCL 257.625(1), and assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a person performing his duties (resisting arrest), MCL 750.81d(1).[1] The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to prison terms of 58 months to 30 years for OWI 3d and 3 to 15 years for resisting arrest. We affirm defendant's convictions, but vacate her sentence and remand for resentencing.

## I. BASIC FACTS

This case arises from a one-car motor vehicle accident. At defendant's trial, Trooper Daniel Drewyor testified that he was dispatched to the location of a crashed and abandoned vehicle just in front of a truck stop on Dixie Highway, and across the street from an IHOP where defendant used to work. The driver side door was open and no one was in the car. As Trooper Drewyor was retrieving a purse from the driver's seat, defendant approached him and identified the purse as hers. Trooper Drewyor explained that defendant smelled like alcohol, had red and glossy eyes, and was unsteady on her feet. He asked defendant whether she had been in the accident, but defendant attempted to leave the scene rather than answer the question. Trooper

---

[1] Defendant was acquitted of one count of resisting arrest.

Drewyor said he told defendant that she could not leave because he was investigating her involvement in the accident, but defendant again attempted to leave. Trooper Drewyor testified that he decided to arrest defendant and, while he was attempting to handcuff her, "[she] pulled her hands away several times and again attempted to leave against [his] orders." Eventually, he and a second trooper managed to handcuff defendant. Trooper Drewyor said he asked defendant to get into the patrol vehicle several times before she complied, and once inside the patrol vehicle, defendant "refused to stay seated, was unbuckling her seatbelt and trying to leave [the] patrol vehicle to the point to where [Trooper Drewyor and Sergeant Herman] had to request a sheriff's deputy to transport her within a caged vehicle."

Defendant maintained at trial that she did not know how her purse ended up in the car, that she repeatedly told Trooper Drewyor that she had not been driving the car, and that she had been at the IHOP when the accident occurred. Charles Knuckles, who testified that he witnessed the accident from a McDonald's Restaurant near the truck stop, claimed that he saw five or six people spill out after the accident and that defendant was not the person who exited the driver's side door. Defendant also averred that she did not attempt to leave the scene, but admitted that she might have "got a little indignant" when Trooper Drewyor was questioning her because she had not done anything wrong. She also denied struggling when Trooper Drewyor handcuffed her. Kimberly Stone, one of defendant's former colleagues at the IHOP, saw the officers handcuffing defendant and testified that it did not appear to her that they had any difficulty in arresting defendant.

After arresting defendant, Trooper Drewyor obtained a search warrant that would allow a hospital to perform a blood-alcohol test on defendant. The results of the test indicated that defendant had a blood-alcohol content of 0.204, approximately two-and-a-half times Michigan's legal limit. Trooper Drewyor took defendant from the hospital to the Monroe County jail. While in jail, defendant made phone calls to her estranged husband and her sister, during which she made admissions indicating that she had crashed the car. She made a similar admission in a phone call with Knuckles. These calls were recorded and played for the jury. As already indicated, the jury convicted defendant of OWI 3d and one count of resisting and obstructing a police officer, and acquitted her of one count of resisting and obstructing a police officer.

## II. DISCUSSION

### A. INSUFFICIENT EVIDENCE

Defendant argues that the prosecution's evidence was insufficient for a jury to conclude beyond a reasonable doubt that she was driving the motor vehicle, that she used force to resist arrest, and that her arrest was lawful. We disagree. This Court reviews sufficiency of the evidence claims de novo, considering "the trial evidence in a light most favorable to the prosecution [to] determine whether a rational trier of fact could have found that all the elements of the offense were proved beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Furthermore, this Court "must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *Id*.

## 1. OPERATING A MOTOR VEHICLE WHILE INTOXICATED

To convict a defendant of operating a motor vehicle while intoxicated requires proof beyond a reasonable doubt that

> (1) the defendant operated a motor vehicle (2) on a highway or other place open to the general public or generally accessible to motor vehicles (3) while under the influence of liquor or a controlled substance, or a combination of the two, *or* with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood. [*People v Hyde*, 285 Mich App 428, 448; 775 NW2d 833 (2009).]

Defendant does not dispute that she was "under the influence of liquor" on the night in question. Rather, she argues there was insufficient evidence to establish the first element because nobody witnessed her driving the car. Defendant's argument fails to appreciate that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted).

At trial, the prosecution played several telephone calls between defendant and other individuals made and recorded while defendant was in jail and during which defendant admitted to driving the car. These statement were admissible under MRE 801(d)(2) as party admissions. In one telephone call, defendant told her sister, Jacqueline Pacheco, "Like I swear I'm never going to drink and drive again because I f*****g had a couple shots." Defendant also said, "I think I just got drunk and drove down the side— like the wrong road." Defendant told Pacheco that she was alone when the accident occurred. During a telephone call with her husband, Kade Johnson, defendant said, "I left [my daughter] with [Pacheco] because I ran to the bank to cash [Pacheco's] paycheck and then f*****g on my way back, I fell asleep so I ran off the side of the road." And during a telephone call with Knuckles defendant stated, "I've never met you, but you just so happen[ed] to be at the [truck stop] when I crashed that car; well, when that car got crashed."

In addition, Stone testified that when she and defendant spoke at IHOP on the night of the accident, defendant told her she had driven into a fence and needed help getting the vehicle unstuck. Specifically, defendant told Stone she "was turning and [she] didn't make the turn." Trooper Drewyor also found defendant's purse on the driver seat of the crashed vehicle. Based on the foregoing, we conclude that the evidence was sufficient for a jury to conclude beyond a reasonable doubt that defendant was operating the vehicle while intoxicated.

## 2. RESISTING ARREST

A conviction for resisting arrest under MCL 750.81d(1) requires proof beyond a reasonable doubt that "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). " 'Obstruct' includes the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command*." MCL

750.81d(7)(a) (emphasis added). In addition, "the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *People v Quinn*, 305 Mich App 484, 492; 853 NW2d 383 (2014).

Defendant does not dispute that she knew Trooper Drewyor was a law enforcement officer. Rather, she first contends that she did not resist arrest. Trooper Drewyor testified that when he attempted to handcuff defendant "[she] pulled her hands away several times and again attempted to leave against [his] orders" and the recording from the patrol car's dashboard camera supports his testimony. Although much of the officers' interaction with defendant occurs out of the dash camera's range, the audio of the exchange comports with Trooper Drewyor's testimony. The video shows that defendant moved away from where officers told her to stand, prompting three officers to move in her direction. From the audio one can hear that defendant resisted Trooper Drewyor's use of a fingerprint scanner to identify her, and that officers ordered her to "stop" doing something at least twice, and that, once officers had handcuffed her, she resisted getting all the way into the trooper's patrol car. One of the troopers can be heard telling her that if she did not comply, she would be charged with resisting arrest, and when the arresting officer attempted to read something to defendant related to her arrest for OWI, defendant may be heard repeatedly and increasingly loudly stating that she "never drove that car." Trooper Drewyor's testimony that defendant attempted to leave the patrol car is corroborated by the camera's capture at one point of three officers quickly moving toward the passenger side of the vehicle. Trooper Drewyor also testified that when defendant was inside the patrol vehicle, "she refused to stay seated, was unbuckling her seatbelt and trying to leave [the] patrol vehicle to the point to where [Trooper Drewyor and Sergeant Herman] had to request a sheriff's deputy to transport her within a caged vehicle." Thus, the evidence was sufficient to allow a jury to conclude beyond a reasonable doubt that defendant resisted and obstructed a police officer.

Defendant also argues that the prosecution failed to establish that her arrest was lawful. See *Quinn*, 305 Mich App at 492. "Generally, seizures are reasonable for purposes of the Fourth Amendment only if based on probable cause." *People v Lewis*, 251 Mich App 58, 69; 649 NW2d 792 (2002). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Maggit*, 319 Mich App 675, 682; 903 NW2d 868 (2017). Our examination of the record convinces us that the prosecution presented sufficient evidence to establish that defendant's arrest was lawful. Trooper Drewyor was investigating a vehicle that had been crashed and abandoned. While Trooper Drewyor was investigating the vehicle, defendant approached him and asked for her purse, which was inside on the driver's side of the vehicle. Defendant would not explain how her purse ended up in the vehicle, appeared intoxicated, and attempted to leave the scene. Under these circumstances, Trooper Drewyor had probable cause to arrest defendant on the reasonable belief that she had committed or was committing an offense. See *Maggit*, 319 Mich App at 682.

Based on the foregoing, we conclude that the evidence was sufficient to allow a jury to conclude beyond a reasonable doubt that defendant was driving the car, that she resisted arrest, and that her arrest was lawful.

## B. SENTENCING GUIDELINES – OFFENSE VARIABLES

Defendant next argues that the evidence did not support the trial court's assessment of points for offense variable (OV) 9 and OV 19. We disagree. We review "the proper interpretation and application of the legislative sentencing guidelines" de novo, and the trial court's factual determinations for clear error; the court's factual findings "must be supported by a preponderance of the evidence." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citation omitted). Clear error exists where this Court "is left with a definite and firm conviction that a mistake has been made." *People v Waclawski*, 286 Mich App 634, 645; 780 NW2d 321 (2009) (quotation marks and citation omitted).

The trial court assessed 10 points for OV 9, which addresses the "number of victims". MCL 777.39(1). Scoring 10 points for OV 9 is appropriate when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." MCL 777.39(1)(c). "Each person who was placed in danger of physical injury or loss of life or property [counts] as a victim." MCL 777.39(2)(a).

While defendant testified that she was not in the vehicle when the accident occurred, she did testify that four of her friends were in the car on the night of the accident. Similarly, Knuckles testified that he saw approximately five or six people exit the vehicle after the accident, but that defendant was not the driver. Neither Stone nor Jacqueline Pacheco definitively testified that defendant was alone on the night of the accident. As such, while there was conflicting evidence admitted at trial regarding whether defendant was driving, the testimony concerning whether there were two or more individuals in the car at the time of the accident was uncontroverted. Thus, a preponderance of the evidence supported the assessment of 10 points for OV 9 because defendant put between two and nine victims at risk of physical injury or death when she operated a motor vehicle while intoxicated with at least four other people in the vehicle.

The court also assessed 15 points for OV 19, which addresses, among other things, the "interference with the administration of justice." MCL 777.49(1). Scoring 15 points for OV 19 is appropriate when "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). To " 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). In *People v Smith*, 318 Mich App 281, 287; 897 NW2d 743 (2016), this Court relied on the definition of force found in *Merriam-Webster's Collegiate Dictionary* (11th ed) when interpreting the use of the word force for the purpose of assessing 15 points for OV 19. "The word 'force' is defined, in relevant part, as 'strength or energy exerted or brought to bear: cause of motion or change[.]' " *Smith*, 318 Mich App at 287 (quoting *Merriam-Webster's Collegiate Dictionary* (11th ed)).

As previously discussed, defendant pulled her hands away from Trooper Drewyor multiple times when he was attempting to handcuff her and, once inside the patrol vehicle, persisted in attempting to unbuckle her seatbelt and leave the patrol car. At some point, the

officers had to request that a sheriff's deputy transport defendant in a caged vehicle. In light of the foregoing, we conclude that the trial court did not err in determining that a preponderance of the evidence supported the assessment of 15 points for OV 19. In sum, we find no error in the trial court's assessment of points for OV 9 and OV 19.

## C. DEFENDANT'S REMAINING ISSUES

In a standard 4 brief,[2] defendant raises issues alleging ineffective assistance of counsel, judicial misconduct, and various errors related to sentencing and the information contained in her pre-sentence investigative report (PSIR).

## 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel rendered constitutionally ineffective assistance by failing to investigate and prepare for trial, failing to file a motion in limine, failing to prepare for cross-examination and direct examination, failing to object to hearsay, and failing to arrange for the jury to hear the entirety of a recorded telephone call. We disagree.

"[D]efendant's claim of ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014) (quotation marks and citation omitted). Findings of fact are reviewed for clear error, while questions of law are reviewed de novo. *Id*. at 67-68. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016). Because the trial court did not conduct a "hearing to determine whether [] defendant's counsel was ineffective, [this Court's] review is limited to mistakes apparent from the record." *Lane*, 308 Mich App at 68.

To succeed on an ineffective assistance of counsel claim, defendant must demonstrate that " '(1) counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), quoting *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012). Defendant bears the burden to prove the factual predicate of her claim that defense counsel did not provide effective assistance. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that trial counsel failed to prepare adequately for trial. Specifically, defendant asserts that counsel failed to interview IHOP employees and to obtain footage from the IHOP security cameras before trial, and that this evidence would have supported defendant's testimony that she was at IHOP when the accident occurred. She also asserts that counsel was ineffective for failing to obtain video from the truck stop, because this evidence would have proved that she was not driving the car when it crashed.

---

[2] A "Standard 4" brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

That defendant went to IHOP on the night of the accident was undisputed at trial. However, there is no record evidence indicating when the accident occurred, and estimations at trial ranged from between 4:00 p.m. and 5:00 p.m. to 6:30 p.m.[3] Thus, even if the IHOP video showed defendant at IHOP, which there is no doubt that it would, the video cannot substantiate her assertion that she was at IHOP when the crash occurred because there is no reliable evidence that establishes when that might have been. Similarly, assuming that the truck stop had video surveillance, nothing in the record indicates that its cameras were angled to capture an accident that happened off its premises, and even if video showed the occupants of the car entering the truck stop, that alone does not provide evidence of who was driving the car at the time of the crash. Thus, defendant has failed to establish that the videos from IHOP or the truck stop would have provided any useful evidence, nor has she given us any reason to remand the matter for further factual development.

Defendant next argues that counsel was ineffective for failing to call her mother-in-law Sue Johnson (Sue), and father-in-law Steve Johnson (Steve), as witnesses. Defendant asserts that Steve and Sue would have testified that defendant told them that she had been dropped off at IHOP and needed a ride home.

Whether to call a witness is presumed to be a matter of trial strategy, *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), and this Court will not substitute its judgment for that of counsel regarding matters of reasonable trial strategy, see *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). At trial, defendant did not testify that she called her in-laws and told them that her friends dropped her off at IHOP and she needed a ride home. Defendant's testimony was that she told Sue Johnson, "there was an accident. Can you, you know, come get us because at that point in time I had planned on going across the street, getting them, bringing them back to IHOP and saying, hey, I have a ride." Thus, it is not entirely clear from defendant's testimony that the Johnsons would have testified as defendant claims. In addition, even if the Johnsons had so testified, it would not have added much, if anything, to defendant's case. Defendant herself testified that she was not driving on the night of the accident, and the jury chose not to believe her. It seems highly unlikely that testimony from the Johnsons about what defendant told them would have been any more persuasive than defendant's direct testimony. Thus, even if we assume for the sake of argument that defendant's trial counsel was ineffective for not calling the Johnsons as witnesses, defendant has not persuaded us that, but for this error, the outcome of the trial would have been different. See *Douglas*, 496 Mich at 592.

---

[3] Defendant testified that the accident occurred at 6:30 p.m. This seems unlikely, given her testimony that she picked up a check from her sister's house around 5:00 p.m., took it to the bank, and then went to a bar, arriving at the bar around 5:45 p.m. There, she had two beers and one shot, before going to a second bar, where she and her friends hung out briefly and waited for some other people to show up. She and her friends then went to the parking lot of IHOP, where they sat and talked for approximately 30 minutes before her friends left her at IHOP, subsequently crashing the car.

Defendant also argues that defense counsel was unprepared for trial because remarks during his opening statement and closing argument contradicted defendant's trial testimony. During his opening statement, defense counsel said that defendant was a passenger in the car when the accident occurred, whereas defendant testified that she was at IHOP when the accident occurred. During his closing argument, counsel suggested that defendant was either a passenger or at IHOP during the accident. Viewing the record as a whole, we cannot say that these statements indicated that defendant's trial counsel was unprepared for trial. Even if we assume that counsel misspoke, the trial court instructed the jury that it must base its decision on the evidence properly admitted at trial, and the statements of the attorneys was not evidence. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Based on the record, it is impossible to conclude that defense counsel was unprepared for defendant's trial or that there is a reasonable probability that, but for counsel's misstatement, the outcome of the trial would have been different. See *Douglas*, 496 Mich at 592.

Defendant further argues that her trial counsel was ineffective for failing to file a motion in limine before trial to exclude recorded telephone calls between defendant and Kade Johnson and between defendant and Jacqueline Pacheco because those calls were essentially impermissible character evidence. We disagree with defendant's characterization of the calls. The calls were highly probative of the key issue of whether defendant was driving when the accident occurred and were admissible under MRE 801(d)(2) (admissions by a party-opponent). Thus, the prosecution's introduction of the calls into evidence was for the proper purpose of showing that defendant was driving when the accident occurred, and any objection to their admission on the ground that they constituted impermissible character evidence would have been futile. Counsel does not render ineffective assistance by failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant contends that her trial counsel failed to prepare adequately for the cross-examination of Trooper Drewyor and Stone. "The questioning of witnesses is presumed to be a matter of trial strategy." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). As previously indicted, we will not second-guess counsel regarding matters of sound trial strategy. See *Vaughn*, 491 Mich at 670.

With respect to Trooper Drewyor, defendant implies that counsel should have cross-examined him about inconsistences between his trial testimony and his police report and the video of defendant's interaction with the arresting officers. She argues that counsel should have pointed out that Trooper Drewyor's report of what Knuckles told him at the scene of the accident differed from Knuckles's trial testimony. However, pointing this out seems just as likely to call into question the credibility of Knuckles, defendant's witness, as to impeach Trooper Drewyor. Defendant also argues that counsel should have pointed out the inconsistency between Trooper Drewyor's observation regarding a vodka stain on defendant's pant leg that matched a stain on the driver's seat of the car, and the video, which defendant asserts showed no such stain. Given that there was no dispute that defendant was intoxicated on the night of the incident, and her admissions in several telephone calls that she was driving the car, we cannot say that defendant suffered prejudice from counsel's failure to draw out this alleged inconsistency.

Moreover, counsel's cross-examination of Trooper Drewyor did elicit contradictory testimony from the trooper. Under direct examination, Trooper Drewyor testified that he and his partner had to "force [defendant's] hands behind her back and cuff her," and that defendant had to be "forced into the [patrol] car." On cross-examination about the same incident, Trooper Drewyor insisted, "I never said there was force, sir. I just said she repeatedly refused to get into the patrol vehicle," and he answered negatively when asked if he had to "put her in the patrol vehicle." In light of the whole record, defendant has failed to show that her trial attorney's cross-examination of Trooper Drewyor "fell below an objective standard of reasonableness." See *Douglas*, 496 Mich at 592.

The same is true with respect to counsel's cross-examination of Stone. Defendant observes that Stone testified at the preliminary examination that two people accompanied defendant when defendant arrived at IHOP, and asserts that her counsel should have elicited this same testimony during his cross-examination of Stone. Defendant argues that if her attorney had asked Stone on cross-examination whether defendant was alone when she arrived at IHOP, and if Stone had testified that defendant was not alone, then Stone's testimony would have supported defendant's argument that she was not driving when the accident occurred. Not only is defendant's scenario speculative, but even if Stone had testified as defendant imagines, eliciting such testimony in order to imply that one of the two people entering the IHOP with defendant was the driver of the car would also have undermined defendant's defense theory that she was in IHOP when the crash happened. Given the possibility of undermining his client's testimony, and considering that defendant and Knuckles testified that several people were in the car that crashed, thus raising the possibility that defendant was not the driver, it appears to us that counsel's decision not to cross-examine Stone on whether defendant entered IHOP was a reasonable decision. See *Vaughn*, 491 Mich at 670.

Defendant also contends that counsel failed to prepare adequately for the direct examination of Knuckles. Defendant asserts that counsel should have anticipated Knuckles would erroneously testify that he was standing 5,000 feet away when the accident occurred, when he was actually standing about a block away. Defendant suggests that her counsel failed to question further Knuckles on this matter because he was unprepared for trial. To the contrary, the potential existed that further quizzing Knuckles on this point would have drawn attention to the error, impugned his credibility with the jury, and minimized the force of his testimony on defendant's behalf.

Defendant next contends that counsel was ineffective for failing to object on hearsay grounds to a portion of Knuckles's testimony on cross-examination. Specifically, she asserts that counsel should have objected to Knuckles's testimony that Whitney Fore, a friend of his who served time in jail with defendant while defendant was awaiting trial in this matter, "[s]aid that she heard that [defendant] was in the jail bragging that she was driving the car and I don't want to get into this . . . ."

"Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Review of the trial transcript shows that the prosecution elicited the testimony at issue not to prove the truth of the matter asserted, but to impeach Knuckles and determine whether Fore's statements affected the substance of Knuckles's trial testimony. MRE 607 ("The credibility of a

-9-

witness may be attacked by any party . . . ."). Fore's statements to Knuckles illustrate his involvement with women jailed with defendant, and the potential influence these relationships may have had on his testimony. Because the testimony at issue was not hearsay, counsel's objection on hearsay grounds would have been futile. See *Ericksen*, 288 Mich App at 201.

Defendant also argues that counsel should have objected to a portion of Trooper Drewyor's testimony involving his use of a fingerprint scanner on defendant. Defendant does not state what objection counsel should have made or explain why the testimony was inadmissible. "An appellant's failure to properly address the merits of [her] assertion of error constitutes abandonment of the issue." *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012). Thus, we consider defendant's argument that defense counsel should have objected during Trooper Drewyor's testimony abandoned.

Finally, defendant argues that counsel was ineffective for failing to request that the jury hear the entirety of the telephone call between defendant and Knuckles. At trial, the prosecution only played a portion of the telephone call in which defendant says, "I've never met you, but you just so happen[ed] to be at the [truck stop] when I crashed that car; well, when that car got crashed." Defendant asserts that this statement sounds better in context with the rest of the telephone call. It does not. While defendant did not ask Knuckles to perjure himself, the call presents her as desperate for Knuckles to testify favorably for her in court. Had defense counsel requested that the jury hear the entirety of the telephone call, there is a strong possibility that it would have hurt defendant's case by damaging the credibility of both defendant and Knuckles. In light of this possibility, counsel's decision not to have the entire conversation played into evidence seems a reasonable decision. See *Vaughn*, 491 Mich at 670.

In sum, we conclude that defendant has failed to show that but for any of her trial counsel's alleged errors, there is a reasonable probability that the outcome of the case would have been different. Accordingly, her claim that trial counsel rendered constitutionally ineffective assistance must fail.

## 2. JUDICIAL MISCONDUCT

Defendant next argues that the trial court judge committed judicial misconduct when he questioned Knuckles because it created the impression that the judge did not find Knuckles's testimony credible, there was no need to clarify Knuckles's testimony, the judge's conduct was only directed at defendant, and the general curative instructions were insufficient to correct the misconduct. We disagree. Because defendant did not object to the judge's questioning of Knuckles when it occurred or at any time thereafter, this issue is unpreserved. See *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). We review unpreserved errors for "plain error that affected substantial rights." *Id*. at 278 (quotation marks and citation omitted). An error affects substantial rights when it " 'could have been decisive of the outcome' of the case." *People v Bailey*, 310 Mich App 703, 716; 873 NW2d 855 (2015), quoting *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994).

Pursuant to MRE 614(b), a trial judge "may interrogate witnesses, whether called by itself or by a party," and the Michigan Supreme Court "has stated that the central object of judicial questioning should be to clarify." *People v Stevens*, 498 Mich 162, 173; 869 NW2d 233

-10-

(2015). "Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Id*. However, "[a] trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 170-171. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. Whether a judge's conduct pierced the veil of judicial impartiality is "a fact-specific analysis." *Id*. "Ultimately, the reviewing court should not evaluate errors standing alone, but rather consider the cumulative effect of the errors." *Id*. at 171-172. The reviewing court should consider the following factors:

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

"Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case." *Id*. "The reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case." *Id*.

Our review of the record convinces us that the purpose of the judge's questioning was to clarify how far Knuckles was from the accident. Knuckles testified that he was approximately 5,000 feet from the accident, which meant that he saw the accident occur from over a mile away. The judge's questions allowed Knuckles to clarify that he was actually about a block away from the accident when it occurred. This clarification potentially enhanced the credibility of Knuckles's testimony. The transcript does not suggest, nor does defendant argue, that the judge's tone and demeanor were objectionable, the scope of the judge's questions was limited to Knuckles's misstatement about his distance from the accident, and clarification was clearly necessary and benefitted defendant. *Stevens*, 498 Mich 172. Finally, to the extent that the trial judge's questioning was error, the court properly informed the jury that it must base its decision on the evidence, and that his "comments, rulings, questions[,] and instructions" were not evidence. As we have already indicated, "[j]urors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *Mahone*, 294 Mich App at 212. Thus, after weighing the relevant factors, we conclude that there was no plain error that affected defendant's substantial rights and, therefore, defendant is not entitled to a new trial. See *Bailey*, 310 Mich App at 716; *Pipes*, 475 Mich at 278.

## 3. SENTENCING ERRORS

Defendant next argues that the trial court erred when it sentenced her as a fourth habitual offender because she has only two prior felony convictions, not three. We agree. Because defendant did not object to the trial court sentencing her as a fourth habitual offender, this issue is unpreserved for appellate review. See *People v Fyda*, 288 Mich App 446, 460 n 35; 793 NW2d 712 (2010) (indicating that a party preserves an issue for appeal when it raises the issue in the trial court and the court considers the issue.) We review unpreserved issues for plain error affecting substantial rights. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). "To

establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Id.* at 356.

In its sentencing memorandum, the prosecution asked the trial court to sentence defendant as a fourth habitual offender based on a February 21, 2013 felony conviction for OWI 3d, and March 26, 2013 felony convictions for OWI 3d and resisting and obstructing a police officer.[4] However, the PSIR shows that defendant was not convicted of resisting and obstructing on March 26, 2013, or on any other date. Although defendant was charged at arrest with two counts of resisting and obstructing, she pleaded nolo contendere to two counts of assault and battery, for which the court sentenced her to 90 days in jail.[5] Furthermore, the "prior record" section of the PSIR indicates that defendant had two prior felony convictions, and the basic information report for the Michigan Department of Corrections indicates the same. Thus, the presentence investigation report appears to support defendant's argument that she had two prior felony convictions, not three, and that the trial court clearly erred when it sentenced her as a fourth habitual offender. Because the error subjected defendant to a sentencing enhancement that increased her minimum sentencing guidelines range, defendant is entitled to resentencing. Accordingly, we vacate defendant's sentence and remand the matter to the trial court for resentencing. In light of our disposition of this issue, we need not address defendant's remaining claims of sentencing error. See *People v Rosenberg*, 477 Mich 1076; 729 NW2d 222 (2007) (indicating that a case remanded to the trial court for resentencing is in a "presentence posture, allowing for objection to any part of the new sentence").

We affirm defendant's convictions, vacate her sentence, and remand for resentencing in accordance with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause

---

[4] The habitual offender fourth offense notice provided in a supplemental information lists the dates of plaintiff's felony convictions as on or around July 11, 2013 (OWI 3d and resisting and obstructing) and on or around February 21, 2013 (OWI 3d). Only the latter date comports with the prosecution's sentencing memorandum and the PSIR. The PSIR lists no offenses, charges, or convictions for July 11, 2013.

[5] For purposes of the habitual-offender statute, misdemeanors punishable by up to two years in prison are deemed felonies for purposes of the habitual-offender statute. *People v Smith*, 423 Mich 427, 434; 378 NW2d 384 (1985). Although the record is not clear as to which subsection of MCL 750.81 applied to defendant's assault and battery convictions, none of the subsections that are potentially applicable in her case qualify as felonies.