*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JALANI DARSHAWN NOWLING,

Defendant-Appellant.

UNPUBLISHED
September 15, 2025
3:05 PM

No. 370659
Kalamazoo Circuit Court
LC No. 2023-000443-FC

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for first-degree premeditated murder, MCL 750.316; and carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve consecutive sentences of life imprisonment and 2 years' imprisonment, respectively. We affirm.

## I. FACTS

On December 30, 2022, the victim posted two pairs of shoes for sale on Facebook Marketplace, and a Facebook account with the name "TG Lotto" contacted the victim about purchasing the shoes. The victim and his girlfriend, knew that "TG Lotto" was defendant and that defendant was friends with an individual whom the victim had a previous conflict with, Keyshawn Givhan.[1] The victim decided to sell the shoes to defendant despite his connection to Givhan.

At approximately 8:48 p.m., the victim messaged defendant asking where to meet. Before responding, defendant took a screenshot of that conversation and sent it to Givhan. Givhan told

---

[1] Givhan was angry with the victim because of a previous incident in which the victim refused to take responsibility for a gun found in a vehicle during a traffic stop, which led to Givhan's arrest and imprisonment. Givhan was released from prison a month before the incident in this case, and since then, he had threatened to kill the victim several times.

defendant to tell the victim to meet on Burdick, which defendant did. A camera at 923 Burdick partially captured the following events. At 9:02 p.m., the victim's car pulled up to the curb. Shortly after the victim arrived, an individual walked from the north driveway of 923 Burdick and in front of the porch. The victim called out to the individual and said, "Lotto." The individual responded, "[Y]o, bring them up" and walked out of view. The victim's car then backed up slowly, pulled forward, and backed up slowly again until it was out of the camera's view. At 9:07 p.m., the camera recorded the sound of multiple gunshots and a scream. The victim's car accelerated back into the camera's view, and several more gunshots followed. The victim's car then drove off and crashed at an intersection, where it was later found by police.[2] At 9:11 p.m., defendant sent a Facebook message to the victim indicating that the victim had not shown up for the meeting.

Officers located six shell casings consistent with ammunition for a nine-millimeter firearm and six shell casings consistent with ammunition for a 7.62 caliber firearm, such as an AK-47 or SKS-style rifle. Because of the trajectory of the bullets, the timing of the volleys, and the distance between the two areas where casings were found, officers believed that there were two shooters in this case.

As part of the investigation, officers reviewed Facebook and cell phone records for the victim, defendant, Givhan, and Givhan's girlfriend, Tina Jones. While reviewing defendant's Facebook account, officers found two photographs taken at Givhan and Jones's residence approximately two hours before the shooting: one was a photo of defendant holding an AK-47 rifle, and the other was a photo of the rifle in a case. Defendant sent the photographs via Facebook messenger to an individual, stating, "We ain't playing up in here." Notably, surveillance videos from doorbell cameras at the front and back doors of Givhan and Jones's residence showed that Givhan and defendant were there in the hours before the shooting, and deletion logs showed that someone deleted videos from 8:57 p.m. to 10:50 p.m. Givhan and defendant's presence at this location was important because a witness had told officers that after she heard the gunshots, she saw a person dressed in black run behind 923 Burdick, where there was a trail that was only 0.18 miles from Givhan and Jones's residence.

Officers searched Givhan and Jones's residence pursuant to a search warrant. They found three empty boxes of 7.62x39 ammunition, which had price tags from a local gun store, in the trash. There was "very strong support" that defendant's DNA was on two of the boxes. Defendant and Jones had visited the local gun store on December 23, 2022 and December 29, 2022— surveillance video showed defendant and Jones inspecting rifles on their first visit and purchasing three boxes of 7.62x39 ammunition on their second visit.

Defendant was convicted and sentenced, as stated earlier. Defendant now appeals.

---

[2] The victim's cause of death was multiple gunshot wounds.

## II.  DIRECTED VERDICT

On appeal, defendant argues that the trial court improperly denied his motion for a directed verdict because there was insufficient evidence to prove that: (1) he shot, or aided and abetted the person who shot, the victim; or (2) he possessed a firearm at the time that the victim was shot.  We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

At the close of the prosecution's case, defendants moved for directed verdicts on the second-degree murder charges, thus preserving this issue for appellate review. When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. *People v. Mayhew*, 236 Mich App 112, 124-125; 600 NW2d 370 (1999).  Similarly, in reviewing whether sufficient evidence existed to sustain a conviction, we review "the evidence in the light most favorable to the prosecution, and consider[] whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014).  "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.  The scope of review is the same whether the evidence is direct or circumstantial." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).  "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

## B. FIRST-DEGREE MURDER

First-degree murder is "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing."  MCL 750.316(1)(a).  "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).  "The real focus of first-degree murder jurisprudence in Michigan has been on the kind of evidence which permits an inference of premeditation and deliberation, and that inference may be established from *all* the facts of the case." *People v Oros*, 502 Mich 229, 241; 917 NW2d 559 (2018) (quotation marks and citation omitted).

"Premeditation is not statutorily defined and cannot be evaluated in a rigid and mechanical manner." *People v Walker*, 330 Mich App 378, 383; 948 NW2d 122 (2019) (quotation marks and citation omitted).  Generally, "premeditation may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a second look at their actions.  The opportunity must be adequate, but it need not be long." *Id*. at 383-384 (quotation marks and citation omitted).  "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the

homicide." *Id*. at 384 (quotation marks and citation omitted). Similarly, "[t]he intent to kill may be proven by inference from any facts in evidence." *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997) (quotation marks and citation omitted). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999).

"A defendant may be vicariously liable for murder on a theory of aiding and abetting." *Bennett*, 290 Mich App at 472; see MCL 767.39. The prosecution must establish the following elements in order to prove a theory of aiding and abetting:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004) (quotation marks and citation omitted; alteration in original).]

In this case, defendant argues that "there was insufficient evidence to prove beyond a reasonable doubt that he was the shooter" or "intended to help the shooter" kill the victim. We conclude that when viewing the evidence in a light favorable to the prosecution, there was sufficient circumstantial evidence that defendant shot the victim or at the very least participated in a plan to kill the victim.

Defendant's relationship with Givhan, recent visits to the gun store, DNA on the empty ammunition boxes, photographs with an AK-47 rifle, and setting up the meeting demonstrated premeditation and deliberation before the shooting occurred. See *Walker*, 330 Mich App 383-384. Moreover, defendant's presence near the scene on the evening of the shooting, and video evidence of the victim saying "Lotto" immediately before the shooting, supported an inference that defendant was one of the shooters. "[T]he prosecution is bound to prove the elements of the crime beyond a reasonable doubt," and "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility[.]" *Nowack*, 462 Mich at 400. Therefore, although defendant argues that there is a possibility of other individuals being the shooters, the prosecution was not required to disprove those theories. See *id*. At the very least, defendant's actions, namely his coordination of the meeting, supported a first-degree murder conviction on an aiding-and-abetting theory. See *Bennett*, 290 Mich App at 274-275.

## C. FELONY-FIREARM

Defendant similarly argues that there was insufficient evidence to support the determination that he possessed a firearm at the time when White was killed. We disagree.

MCL 750.227b(1) states that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony . . . ." "Possession [of a firearm] may be actual or constructive and may be proved by circumstantial evidence." *People v Burgenmeyer*, 461 Mich 431, 437; 606 NW2d 645 (2000) (quotation marks and citation omitted). Therefore, a defendant can be found guilty of felony-firearm even if no one

directly saw the defendant holding a firearm.  See *People v Daniel*, 207 Mich App 47, 50; 523 NW2d 830 (1994).

In this case, viewing the evidence in the light most favorable to the prosecution, the record supports the conclusion that defendant possessed a firearm during the shooting.  The day before the shooting, defendant purchased the type of ammunition used, and a photograph from two hours before the shooting showed defendant holding the type of firearm used.  Additionally, video evidence placed defendant at the scene.  Although no witness testimony or video evidence showed defendant holding a firearm, that does not preclude a finding that he possessed a firearm.  See *id*. Defendant walked out of view of the camera, and a few moments later, the camera recorded the sound of gunshots.  Considering all the evidence, the record supports the conclusion that defendant possessed a firearm when the victim was killed.  See *id*.

## III.  LAY WITNESS TESTIFYING AS AN EXPERT WITNESS

Defendant further argues that the trial court erred by allowing Michael Fry, a lay witness, to give expert testimony regarding cell phone location data, including electronic device location and device mapping, and matters outside of his personal knowledge.  We agree but conclude that, in light of all the evidence, any error did not prejudice defendant.

### A. PRESERVATION AND STANDARD OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."  *People v Aldrich*, 246 Mich App 101, 122-123; 631 NW2d 67 (2001).  Because defendant did not object to Fry's testimony on these grounds, this issue is not preserved for appellate review.  See *id*.

Although evidentiary issues are normally reviewed for an abuse of discretion, "[u]npreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights."  *People v Benton*, 294 Mich App 191, 195, 202; 817 NW2d 599 (2011).  "Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant."  *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006).  "Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the trial proceedings."  *Id*.  "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence."  *Carines*, 460 Mich at 763-764 (quotation marks, citation, and alteration omitted).

### B. ANALYSIS

Generally, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  MRE 602.  MRE 701, which governs opinion testimony by lay witnesses, states as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception; and

> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue.

Notably, opinion testimony by a lay witness is appropriate when it "do[es] not involve highly specialized knowledge, and [is] largely based on common sense." *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003).

In this case, Fry was a criminal analyst for the Kalamazoo Public Safety Department. The trial court did not qualify Fry as an expert witness; however, it stated that Fry "certainly appears to be able to testify—certainly give a lay-opinion about what's going on." On appeal, defendant argues that the trial court erred by allowing Fry "to testify about facts he does not have direct observation of and expert testimony regarding extraction and cell phone location data."

Because the average person would not know how to access or extract cell phone data, much less have the program expertise to analyze it, extracting and analyzing cell phone location data requires technical or other specialized knowledge, and therefore, generally requires expert testimony.[3] See *People v Bass*, 317 Mich App 241, 254-255; 893 NW2d 140 (2016); *McLaughlin*, 258 Mich App at 658. Accordingly, the trial court erred by allowing Fry, a lay witness, to testify about defendant's cell phone location data. Nevertheless, defendant has failed to show that this error prejudiced him. Video footage showed defendant at: (1) the gun store on December 23, 2022 and December 29, 2022; (2) Givhan and Jones's residence on the evening of the shooting; and (3) the scene of the shooting moments before it happened. Because Fry's testimony was cumulative to this video footage, defendant has failed to show that the error affected the outcome of the trial proceedings. See *Pipes*, 475 Mich at 279.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica

---

[3] MRE 702, which governs testimony by expert witnesses, provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.